IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JARED N. JOHNSON, individually and on behalf of a class of all persons and entities similarly situated,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ADROIT HEALTH GROUP LLC<br><br>　　　　Defendant. | Case No. **3:19-cv-00333-JAG**<br><br>CLASS ACTION COMPLAINT |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.  Plaintiff Jared N. Johnson ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.  Adroit Health Group LLC ("Defendant") made a pre-recorded telemarketing call to Plaintiff's cellular telephone number, which is prohibited by the TCPA.

3.  Plaintiff never consented to receive the call, which was placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf

of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

4.  A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

5.  Plaintiff Jared N. Johnson is a resident of Henrico County, Virginia.

6.  Defendant Adroit Health Group LLC is a Texas limited liability company with its principal place of business in McKinney, Texas.  Defendant is also registered to do business in this District.  Defendant's registered agent is identified as CT Corporation at 100 Shockoe Slip, 2nd Floor, Richmond, Virginia 23219.

**Jurisdiction & Venue**

7.  The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law.

8.  Defendant regularly engages in business in this District, which includes making telemarketing calls into this District and providing insurance brokerage services in this District.

9.  Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the telemarketing calls to Plaintiff occurred in this District.

**The Telephone Consumer Protection Act**

10.  In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

12. The TCPA also makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." *See* 47 U.S.C. § 227(b)(1)(B).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

15. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## The Growing Problem of Automated Telemarketing

16. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

17. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

18.     In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

19.     *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

20.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

21.     According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited April 9, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.*

22.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited April 15, 2019).

**Defendant's Illegal Telemarketing**

23. Defendant is an insurance marketing agency that sells insurance products throughout the United States, including Virginia.

24. Defendant uses telemarketing to promote its insurance products and offerings.

25. Defendant's telemarketing efforts include the use of pre-recorded messages.

26. Recipients of these calls, including Plaintiff, did not consent to receive them.

27. Defendant used this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone or respond to the text contact through a telephone call.

28. Through this method, Defendant shifts the burden of wasted time to the consumers it calls with unsolicited messages.

**The Calls to Plaintiff**

29. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

30. Plaintiff's cellular telephone numbers are (708) 359-XXXX and (804) 627-XXXX.

31. Defendant placed two different telemarketing calls to Plaintiff's cellular telephone number on July 13th, 2018 and March 20, 2019.

32. The Caller ID Numbers were (757) 394-4353 (Virginia area code), (516) 219-0007, and (516) 219-0009 (New York area code), respectively.

33. Each time a pre-recorded message was played before connecting Plaintiff to one of Defendant's call center agents.

34.     The use of a pre-recorded message is a consistent with the use of an ATDS, as it would be illogical to manually call numbers only to then play a pre-recorded message.

35.     Despite Caller ID displaying local Virginia and New York phone numbers, Defendant's call center agent was calling from Florida.

36.     The local Caller ID number was used to mislead call recipients into believing the call was local, so there would be a better chance that they would answer.  This is also consistent with the use of an ATDS.

37.     No company was identified in the pre-recorded message, so Plaintiff responded to speak with a live individual.

38.     Plaintiff was able to identify Defendant Adroit Health Group by feigning interest in the generic insurance telemarketing pitch that was made on the calls.

### Common Allegations

39.     A number of individuals have complained about telemarketing calls from Defendant:

> I got the "Ann" robocall for health insurance, made to my number on the national do not call list. I went through their enrollment process . . . to try to figure out who called, and it led to A1 Health/Adroit Health Group, LLC, registered in TX, and FL.
>
> The next day (August 30, 2018) they called me twice from 234-206-8892, 13 minutes apart, trying to get me to complete the verification email that they had sent me. . . .
> *Caller: A1 Health/Adroit Health Group, LLC*
> *Call type: Telemarketer*

*See* https://800notes.com/Phone.aspx/1-234-206-8892 (Last Visited March 15, 2019).

> Its a florida call center pimping for adroit health group which just had class action suit filed. The other partner in crime is health insurance innovations.
> *Caller: Adroit health*

> *Call type: Telemarketer*

See https://800notes.com/Phone.aspx/1-803-794-1848 (Last Visited March 15, 2019).

> Telemarketers selling indemnity health plans that do not comply with Obama care. They use the fake insurance agency name "National Enrollment Center." They are selling plans through Adroit Health Located in Texas. This insurance agency is calling from Florida.. They also sometimes use the phone number 855-419-4505. I believe many states are now banning the indemnity plans as a cruel hoax.Google searching this number also leads to a website www[xxx]nationalhealthinsurance[xxx..]group. And not surprisingly, the registrar/registrant is hidden by a scam enabler proxy privacy service.
>
> *Caller: National Enrollment Center*
>
> *Call type: Telemarketer*

See https://800notes.com/Phone.aspx/1-866-800-0831 (Last Visited March 15, 2019).

40. To the extent Defendant contends that it obtained consent or agreement from Plaintiff and the class members for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained.

41. In any event, consent is an affirmative defense under the TCPA, and is unavailable unless Defendant can show that it had prior express consent in writing, and that it has otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on national do-not-call rules, training personnel on national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call database no more than 31 days prior to making any calls, and maintaining records documenting such access.

42. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

## Class Action Statement

43. As authorized by Rule 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

44. The Class of persons Plaintiff propose to represent include:

> All persons within the United States: (a) to whom Defendant and/or a third party acting on Defendant's behalf, made one or more non-emergency telephone calls; (b) to a cellular telephone number or to a number where the recipient is charged for the call; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

45. Excluded from the class are the Defendant, any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

46. The proposed class members are identifiable through phone records and phone number databases.

47. The potential class members number in the thousands, at least. Individual joinder of these persons is impracticable.

48. Plaintiff is a member of the proposed Class.

49. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

　　a.　Whether Defendant used pre-recorded messages to make the calls at issue;

　　b.　Whether Defendant placed telemarketing calls without obtaining the recipients' valid prior express written consent;

  c. Whether Defendant manipulated the Caller ID to send telemarketing calls;

  d. Whether Defendant's violations of the TCPA were negligent, willful, or knowing; and

  e. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant's actions.

50. Plaintiff's claims are based on the same facts and legal theories as the claims of all class members, and therefore are typical of the claims of class members, as the Plaintiff and class members all received telephone calls through the same automated telemarketing process.

51. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

52. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

53. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case and given the small recoveries available through individual actions.

54. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)

55. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

56. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with a pre-recorded message to the cellular telephone number of the Plaintiff.

57. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with a pre-recorded message to a cellular telephone number of Plaintiff.

58. As a result, Plaintiff and members of the Class are presumptively entitled to an award of $500 in damages for each and every call made in violation of the TCPA, 47 U.S.C. § 227.

59. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making calls, except for emergency purposes, to any residential or cellular telephone number using an artificial or prerecorded voice in the future.

60. The Defendant's violations were negligent, willful, or knowing.

### Relief Sought

For himself and all class members, Plaintiff requests the following relief:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violated the TCPA;

E. An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making calls, except for emergency purposes, to any residential number using an artificial or prerecorded voice in the future.

F. An award to Plaintiff and the Class of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**JURY TRIAL DEMANDED**

Dated: May 6, 2019

**JARED N. JOHNSON**

By Counsel:

*/s/ Michael B. Hissam*
Michael B. Hissam (VSB #76843)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
t: 681-265-3802
f: 304-982-8056
mhissam@hfdrlaw.com